UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANDREW MANN, | ) |
| | ) |
|     Petitioner, | ) |
| | ) No.    3:15-CV-570-PLR-HBG |
| v. | ) |
| | ) |
| DOUG COOK, | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM OPINION

This is a pro se prisoner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 2]. Respondent filed an answer and the state record [Docs. 8 and 9]. Petitioner filed a reply [Doc. 12[1]] and a motion for status [Doc. 18]. After reviewing the filings and the state court record, the Court finds that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rule 8(a) of the Rules Governing § 2254 Cases and *Schirro v. Landrigan*, 550 U.S. 465, 474 (2007) and Petitioner's motion for status [*Id.*] will be **GRANTED** to the extent that his § 2254 petition [Doc. 2] will be **DENIED** and this action will be **DISMISSED**.

### I.     PROCEDURAL HISTORY

On December 5, 2008, a Knox County jury found Petitioner guilty of two counts of first-degree murder [State Court Record, Attachment 2 p. 147–48]. These convictions arose out of an

---

[1] Petitioner's reply, which he called a "rebuttal," is unsigned [Doc. 12]. As such, it does not satisfy Rule 11(a) of the Federal Rules of Civil Procedure, which requires that a party not represented by counsel personally sign every pleading, written motion, or other paper filed in the court. Accordingly, the Clerk will be **DIRECTED** to send a copy of the reply [*Id.*] to Petitioner and Petitioner shall have twenty (20) days from the date of entry of this memorandum opinion and the accompanying order to return a signed copy of his reply to the Court. If Petitioner does not timely do so, his unsigned reply [*Id.*] will be **STRICKEN** from the record.

incident on June 29, 2007, in which Petitioner shot and killed Terrance and Alisa McGhee, the parents of his girlfriend, Amanda McGhee. *State v. Mann*, No. E2010-00601-CCA-R3-CD, 2012 WL184157, at *1 (Tenn. Crim. App.), *perm. app. denied* (Tenn. June 20, 2012). Petitioner appealed his convictions and sentence to the Tennessee Court of Criminal Appeals ("TCCA"), and the TCCA affirmed them. *Id.* at *20.

Petitioner next filed a petition for post-conviction relief [State Court Record Attachment 25 p. 2121–29, 2140–45, 2149–60]. After an evidentiary hearing, the post-conviction court denied relief, and the TCCA affirmed this denial. *Mann v. State*, No. E2014-01524-CCA-R3-CD, 2015 WL 3643473, at *3 (Tenn. Crim. App. June 12, 2015), *perm. app. denied* (Tenn. Aug. 14, 2015).

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The § 2254(d) standard is hard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

Petitioner seeks relief under § 2254 based on claims of ineffective assistance of trial, appellate, and post-conviction counsel, as well as claims of trial judge error, bias, and incompetence [Doc. 2-1 p. 4–6; Doc. 12]. As set forth more fully below, however, Petitioner's claims for ineffective assistance of post-conviction counsel are not cognizable under § 2254, and Petitioner procedurally defaulted all other claims except his claims that trial counsel was ineffective for advising him to testify and that the trial court erred in various rulings regarding the exclusion and admission of certain evidence at trial. Accordingly, the Court will address Petitioner's claims for ineffective assistance of post-conviction counsel and his procedurally default of other claims before addressing the § 2254 claims that are properly before the Court.

### A. Ineffective Assistance of Post-Conviction Counsel Claims

First, as set forth above, Petitioner seeks relief under § 2254 based on claims for ineffective assistance of his post-conviction counsel[2] [Doc. 2–1 p. 6]. Criminal defendants, however, have no right to counsel in state post-conviction proceedings and thus have no constitutional cause of action for ineffective assistance of counsel in those proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); 28 U.S.C. 2254(i) (providing that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief" under § 2254). Accordingly, Petitioner's claims for ineffective assistance of post-conviction counsel are not cognizable under § 2254 and they will be **DISMISSED**.

---

[2] Petitioner does not assert that post-conviction counsel failed to assert any claims for ineffective assistance of counsel as cause to overcome procedural default of such a claim [Doc. 2-1 p. 6]. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012); *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014). While Petitioner cites *Sutton* in his rebuttal [Doc. 12 p. 3], Petitioner does not state what, if any, ineffective assistance of trial counsel claim his post-conviction counsel should have raised [*Id.*] and this conclusory citation therefore fails to state a claim upon which relief may be granted under § 2254.

### B. Procedurally Defaulted Claims

Petitioner also seeks relief under § 2254 based on a number of claims that he did not raise in his appeals to the TCCA [*compare* Doc. 2-1 p. 4–6 and Doc. 12 *with* State Court Record Attachment 19 and State Court Record Attachment 27]. Before a district court may grant habeas relief to a state prisoner, however, the prisoner must exhaust all of his available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Specifically, the prisoner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). A petitioner who fails to raise his federal claim in the state courts and cannot do so now due to a procedural rule has committed a procedural default that forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)

Petitioner procedurally defaulted all claims that he did not fully and fairly raise in his appeals to the TCCA. *See* Tenn. Code Ann. § 40-30-102(a) (setting forth Tennessee's one-year limitation period for post-conviction petitions) and § 40-30-102(c) (setting forth Tennessee's "one petition" rule for petitions for post-conviction relief). As such, the Court will only address the merits of the claims that Petitioner raised in his appeals to the TCCA and raises in his § 2254 petition, including the following:

1. Trial counsel was ineffective for coercing Petitioner to testify at trial [Doc. 2-1 p. 4; State Court Record Attachment 27 p. 2259–60];

2. The trial court erred in excluding a 2003 report of abuse on the part of her father by Amanda McGhee from the evidence at trial [Doc. 2-1 p. 4–5; State Court Record Attachment 19 p. 1725–30];

3. The trial court erred in excluding expert testimony regarding Petitioner's diminished capacity from the evidence at trial [Doc. 12 p. 3]; and

4. The trial court erred in admitting photographs of the victims from the crime scene as evidence at trial [Doc. 2-1 p. 5; State Court Record Attachment 19 p. 1721–25].

[*compare* Doc. 2-1 p. 4–6 and Doc. 12 *with* State Court Record Attachment 19 and State Court Record Attachment 27].

### C. Petitioner's Trial Testimony

First, in his § 2254 petition, Petitioner alleges that trial counsel was ineffective for coercing him to testify at trial because this shifted the burden of proof to the defense [Doc. 2-1 p. 4]. Petitioner raised this argument in his appeal of the denial of his petition for post-conviction relief under somewhat different terms [State Court Record Attachment 27 p. 2259–60] and Respondent therefore asserts that Petitioner procedurally defaulted it [Doc. 9 p. 15–16]. Even if the Court assumes that Petitioner exhausted this claim in the state courts and that this claim is timely, however, Petitioner has failed to establish that he is entitled to relief under § 2254 for this claim.

The TCCA set forth a detailed and well-reasoned analysis of Petitioner's claim that counsel was ineffective for advising him to testify at trial in its opinion affirming the post-conviction court's denial of relief for this claim. Specifically, the TCCA noted that the trial court had fully explained to Petitioner that it was his decision whether or not to testify and that Petitioner had agreed with this statement and stated his intention to testify.[3] *See Mann v. State*, No. E2014-01524-CCA-R3-CD, 2015 WL 3643473, at *6 (Tenn. Crim. App. June 12, 2015), *perm. app. denied* (Tenn. Aug. 14, 2015). The TCCA further found that (1) trial counsel's decision to advise

---

[3] The state court record fully supports this finding [State Court Record Attachments 3–4 p. 295–307] and Petitioner acknowledged this in his testimony at the post-conviction hearing [State Court Record Attachment 26 p. 2199, 2202].

5

Petitioner to testify at trial was reasonable in light of the fact that the trial court had admitted Petitioner's confessions to police as evidence at trial and excluded expert testimony regarding Petitioner's mental health issues from the evidence at trial, which led trial counsel to determine that having Petitioner testify would allow the jury to view Petitioner's "'limitations and susceptibility'" first-hand; and (2) Petitioner did not establish that he suffered any prejudice due to his testimony, as it "provided some of the only evidence at trial that mitigated the State's overwhelming proof regarding premeditation."[4] *Id.*

As the TCCA noted, the record establishes that trial counsel sought to suppress Petitioner's pretrial statements to police and to introduce expert testimony regarding Petitioner's "mental limitations" at trial, but the trial court admitted Petitioner's statements to police and excluded the expert testimony regarding Petitioner's mental health issues [State Court Record Attachment 6 p. 640–47; State Court Record Attachments 12 and 13]. *Id.* Moreover, Petitioner has not disputed the TCCA's finding that the state presented substantial evidence of Petitioner's premeditation of the killings, including Petitioner's own statements to police,[5] testimony from a witness that she had given Petitioner a gun at the request of Amanda McGhee several days before the killings and that Petitioner had "just smiled" when the witness asked if Petitioner was going to kill the victims, and testimony from a witness who spoke to Petitioner on the phone right before he shot the first victim that "Petitioner was 'calling the shots' on the day of the murders." *Id.* at *1 and 6.

---

[4] Petitioner never disputed that he had shot the victims [Doc. 2-1 p. 5].

[5] Petitioner acknowledged at the post-conviction hearing that he had given pretrial statements to police in which he had acknowledged both planning and executing the killings of the victims [*Id.* at 2207]. Petitioner specifically testified that his pretrial statements to police included admissions that he had the gun that he used for the killings in his possession for a few days before the killings and that he had waited a few hours after killing the first victim in his sleep for the second victim to come home, at which point he "had to shoot her," as well as the reasons that he felt that he had to shoot the first victim [*Id.* at 2205–7].

Accordingly, under the circumstances, Petitioner was the best, if not only, person who could have provided evidence to mitigate the state's evidence that Petitioner premeditated the killings. As such, the TCCA's findings that counsel was not deficient in advising Petitioner to testify and that Petitioner did not suffer any prejudice from his decision to testify were not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to § 2254 relief for this claim.

### D. Excluded Evidence

Petitioner also seeks relief under § 2254 on the grounds that the trial court erred in excluding a 2003 report alleging abuse on the part of Terrance McGhee that Amanda McGhee submitted to the Department of Children's Services [Doc. 2-1 p. 5] and in excluding evidence of his diminished mental capacity [Doc. 12 p. 3] as evidence at trial. In his direct appeal of his convictions, Petitioner asserted that exclusion of this evidence violated his right to due process and to a fair trial [State Court Record Attachment 19 p. 1711–21 and 1725–30].

"'[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). An evidence rule that infringes on a "'weighty interest of the accused'" and is "''arbitrary' or 'disproportionate'"" to its designed purpose may violate this constitutional right. *Id.* However, "well-established rules of evidence permit judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.*

### 1. 2003 Report

As set forth above, Petitioner seeks relief under § 2254 based on his assertion that trial court erred in excluding a 2003 report alleging abuse on the part of Terrance McGhee that Amanda

McGhee submitted to the Department of Children's Services. The TCCA held as follows regarding this claim:

> The trial court found that the records were not relevant within the meaning of Tennessee Rule of Evidence 401. As discussed above, Rule 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court reasoned that the mere fact that Amanda McGhee had complained to DCS many years earlier of physical abuse committed by her father did not logically make it any more likely that she repeated those same claims to the defendant years later. The trial court determined that it required an unfounded "leap of faith [to conclude] that she made a complaint to A; therefore, she made ... the same complaint to B." We do not believe that the trial court's conclusion in this regard was illogical or resulted in any injustice to the defendant.
>
> We would add that whether or not Amanda McGhee had previously claimed to the defendant that she had been abused by her father was itself not a fact of any apparent consequence to the outcome of the trial, and therefore may not have been relevant in and of itself. The key issue to be determined at the trial was whether the defendant committed the killings in a premeditated fashion, *viz.*, "after meditating sufficiently free from excitement and passion as to be capable of premeditation." T.C.A. § 39–13–202. Merely establishing that Amanda McGhee claimed to the defendant that she had been and was being abused by her father does not render it any more or less likely that the defendant was so consumed by passion and excitement on that particular day that he was incapable of premeditating the killings. Standing alone, it simply suggests a motive for the killings.
>
> To establish that the defendant was so overcome by passion and excitement that he was incapable of premeditation when he killed the victims, some additional evidence would be required: evidence that might establish that the defendant had only recently learned of Amanda[] McGhee's alleged abuse, had some reason to fear for her immediate safety, or any other evidence that might indicate that he was still operating under the passion and excitement of learning of the alleged abuse when he shot the victims. No such evidence was

offered by the defense, and the defendant's own testimony directly contradicted any such inferences. The defendant testified that Amanda McGhee had been complaining to him that she was suffering essentially the same forms of abuse (hitting, slapping, *etc.*) at the hands of her father over an extended period of time. Such ongoing complaints, made over a period of weeks, all but foreclose the possibility that the defendant was still operating under the influence of such passion and excitement from hearing the allegations that he was rendered incapable of premeditation when he committed the killings. In short, a report of abuse made to a third party by Amanda McGhee in the year 2003, even if it helped establish that she repeated those claims to the defendant, would not render it any more or less likely that the defendant operated under such overwhelming passion and excitement on the day in question that he was incapable of meditating on his actions.

The defendant also argues that the trial judge's decision to exclude the 2003 DCS report violated his constitutional right to present a defense, in violation of *State v. Powers,* 101 S.W.3d 383, 394 (Tenn.2003). The defendant directs us to *Holmes v. South Carolina,* 547 U.S. 319, 331, 126 S. Ct. 1727, 164 L.Ed.2d 503 (2006), and *State v. Rice* 184 S.W.3d 646, 671 (Tenn. 2006), and argues that these cases support the broad principle that a defendant has the constitutional right to present evidence implicating others in a crime. However, *Powers* held that "the Rules of Evidence are adequate to determine whether [evidence implicating others] is admissible," 101 S.W.3d at 395, and for the reasons we just explained, the trial court properly ruled that this report was inadmissible under the rules of evidence. Moreover, even if the 2003 DCS report can be properly considered as evidence implicating Amanda McGhee in the killings, the mere fact that Amanda McGhee was involved in instigating the killings (a fact about which there was no dispute at trial), standing alone, in no way exonerates the defendant or lessens his degree of culpability. *Holmes, Powers, Rice,* and other cases analyzing a defendant's right to present evidence implicating others in the commission of the crime have done so in the context of evidence that would tend to establish the defendant's innocence by the process of elimination. These cases do not stand for the proposition that a defendant has the constitutional right to present evidence

> implicating others in a crime simply for purposes of dragging the
> proverbial captain down with the sinking ship.

*State v. Mann*, No. E2010-00601-CCA-R3-CD, 2012 WL184157, at *16–17 (Tenn. Crim. App.), *perm. app. denied* (Tenn. June 20, 2012).

The TCCA's findings that the 2003 report of abuse did not have any probative value in Petitioner's underlying criminal case and that the trial court therefore properly excluded it were not unreasonable applications of federal law or unreasonable determinations of the facts in light of the evidence presented. As the TCCA noted, nothing in the record suggests that Petitioner learned of this report soon before the killings such that the report could have been an immediate cause of passion or rage on the part of Petitioner that led to the killings. To the contrary, Petitioner testified that Amanda McGhee had complained to him about her father's abuse repeatedly over a period of time prior to the killings. As such, it was apparent that the 2003 report was not relevant to whether Petitioner premeditated the killings.

Moreover, the trial court allowed Petitioner to testify at trial that Amanda McGhee had repeatedly told him that her father was abusing her, that it was Amanda McGhee's idea for Petitioner to kill her parents, that Amanda McGhee had provided a gun to Petitioner through a friend, and that Amanda McGhee had repeatedly urged him to kill her parents [State Court Record Attachment 3 p. 325–45], all of which was more relevant to Ms. McGhee's involvement in and Petitioner's motive for and premeditation of the killings than the 2003 abuse report was. Thus, the exclusion of this report did not deprive Petitioner of his ability to present a complete defense to the claims against him and Petitioner is not entitled to relief under § 2254 for this claim.

### 2. Expert Testimony

In this claim, Petitioner asserts that the trial court erred in excluding expert testimony regarding his diminished mental capacity [Doc. 12 p. 3]. The TCCA affirmed the trial court's

decision to exclude this evidence based on Tennessee law providing that expert testimony regarding a criminal defendant's mental state must indicate that the defendant lacked the ability to form the required culpable intent to be admissible and because the trial judge had doubts regarding the trustworthiness of the proffered evidence. *Mann*, 2012 WL at *12–13 (quoting *State v. Hall*, 958 S.W. 679, 690 (Tenn. 1997)).

The record supports the trial court and TCCA's findings that neither of the experts Petitioner's defense sought to have testify regarding Petitioner's diminished mental capacity expressed the opinion that Petitioner lacked the ability to form the intent required for first-degree murder [State Court Record Attachment 4 p. 496–97; 636]. Moreover, the Sixth Circuit has specifically held that a state law that prevents a criminal defendant from presenting a defense of diminished capacity does not violate the constitution. *Wong v. Money*, 142 F.3d 313, 323–26 (6th Cir. 1998) (setting forth detailed analysis as to why a state law preventing a criminal defendant from presenting expert testimony in support of a diminished capacity defense did not violate the defendant's constitutional rights).

Thus, the TCCA's holding that Petitioner was not entitled to relief for this claim was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to relief under § 2254 for this claim.

### E. Victim Photographs

Petitioner's last claim for relief under § 2254 is that the trial court erred in admitting photographs of the victims, which he argues highly prejudiced him in light of the fact that he never denied killing the victims [Doc. 2-1 p. 5]. Petitioner raised this claim in his direct appeal of his convictions on the grounds that admission of this evidence violated his right to due process and to a fair trial [State Court Record Attachment 19 p. 1721–1725].

The TCCA held as follows regarding this claim:

> In this case, the trial court weighed the evidentiary value of the crime scene photographs against the danger that they might unduly inflame the passions of the jury and concluded that, on the whole, the prejudicial effect of the photographs did not outweigh their probative value. We can discern no fault with that decision. While the defendant confessed to having committed the killings, he vehemently contested the issue of his state of mind, especially with respect to premeditation. The photographs were relevant to this issue. "Photographs showing the injuries of the victim are properly admitted if the defendant admits he killed the victim but seeks to show a non-criminal homicide or that the offense was of a lesser degree than murder." *Banks,* 546 S.W.2d 949. Where "deliberation or premeditation is an element of the crime charged against this defendant, *viz.,* first degree murder," photographs may be properly introduced "to establish the degree of the homicide." *Id.*
>
> The two most graphic photographs in dispute show (1) the body of Ms. McGhee with two bullet holes in her back, lying face down on the floor with a towel covering a portion of her body, and (2) the body of Mr. McGhee lying in his bed, with blood splatter covering a significant portion of the pillow. Although photographs of corpses in any condition are to a certain degree disturbing, as crime scene photographs go, these particular photographs are not particularly gruesome, lurid, or likely to unduly inflame the passions of the jury.
>
> They are, however, highly relevant to the issue of the state of mind of the shooter. They reflect that the defendant used a firearm against unarmed victims, which precedent establishes may be relevant to a jury finding of premeditation. *See State v. Bland,* 958 S.W.2d 651, 659 (Tenn.1997). In addition, the photographs reveal that a blanket and bleach had been poured over Ms. McGhee's body. Steps taken to cover up the crime may also be relevant to the defendant's state of mind, as well as to the issue of premeditation. *See State v. Leach,* 148 S.W.3d 42, 54 (Tenn.2004). The photographs are also relevant because they display the positions and locations of the bodies as they were found by the police, and support an inference that Mr. McGhee was shot while asleep in his bed and Ms. McGhee was shot while fleeing down a hallway. The photographs appear to

> be clear and accurate in their representations of all of the relevant facts described above.
>
> For these reasons, we believe that the trial court properly found that the probative value of the photographs outweighed their potential to cause unfair prejudice. Although the defendant admitted to shooting the victims and the State presented testimonial evidence concerning the victim's injuries, location of the bodies, and some of the other facts revealed by the photographs, the presence of these countervailing factors is not sufficient to change the overall legal analysis in light of the other factors we have discussed above. The defendant has failed to show that the trial court abused its discretion by admitting the photographs, and his claim is denied accordingly.

*Mann,* 2012 WL at * 15.

Claims that a state court erred in admitting evidence are not cognizable under § 2254 unless the error was so egregious that it denied the defendant his constitutional right to a fair trial. *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005). The TCCA's finding that these photographs were not more prejudicial to Petitioner than they were probative was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. The two most graphic photographs of the victims introduced at trial show the upper portion of Terrance McGhee's body on a bed next to a pillow covered in blood splatter and blood [State Court Record Attachment 9 p. 996] and Alisa McGhee on the floor with various blood stains on her clothing, a towel over her, and what appears to be a bleach stain beside her body [*Id.* at 980]. While these photographs were not highly relevant to establish Petitioner's premeditation to kill the victims, the positions of the victims' bodies and their surroundings were relevant to this issue. Moreover, the photographs were not overly explicit or gruesome and were consistent with Petitioner's account of how he had killed the victims. Thus, the admission of these photographs did not violate Petitioner's constitutional right to a fair trial and Petitioner is not entitled to relief under § 2254 for this claim.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's motion for status [Doc 18] will be **GRANTED** to the extent that his § 2254 petition [Doc. 2] will be **DENIED** and this action will be **DISMISSED**, and the Clerk will be **DIRECTED** to send a copy of his reply [Doc. 12] to Petitioner and Petitioner shall have twenty (20) days from the date of entry of this memorandum opinion and the accompanying order to return a signed copy of his reply to the Court. If Petitioner does not timely do so, his unsigned reply [*Id.*] will be **STRICKEN** from the record.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. Specifically, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that Petitioner did not fairly present these claims to the TCCA in a manner that rendered consideration of their merits likely and that the claims are therefore procedurally defaulted. Further, as to the claims that Petitioner did not procedurally default, Petitioner has not made a substantial showing that he is in custody in violation his constitutional rights. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**